GEORGE WEAVER, Appellant, v. CHICAGO & N. W. RAILWAY Co., Appellee.

**Railroads:** CROSSINGS: INJURY TO STOCK.  Where a railway company acquiesced in and constructed an open crossing, and the land owners at their own expense changed it to a closed crossing and so maintained the same, they could not recover of the company for stock killed upon the track which passed through the crossing gate negligently left open by a trespasser; it affirmatively appearing that the stock did not escape onto the track as a result of insufficient fence.

**Same:** PLEADINGS: EVIDENCE.  Where it appeared, as in this action, that plaintiff's stock was killed on a crossing, the question of whether the crossing was public or private, and if private whether it was a closed or an open crossing, was involved; and the railway company was entitled, under a general issue, to show that the crossing as originally constructed by it was open, but that plaintiff and his grantor on their own motion and at their own expense closed the crossing with gates, and that plaintiff's stock passed through the gate negligently left open by trespassers and onto the right-of-way, and that the accident was not the result of any failure of the company to maintain a safe fence.

**Same:** CROSSINGS: STATUTORY SIGNALS.  The statute requiring railroad companies to sound the engine whistle and ring the bell upon approaching a crossing has no application to private crossings.

*Appeal from Monona District Court.*—HON. WILLIAM HUTCHINSON, Judge.

THURSDAY, FEBRUARY 17, 1910.

THIS is an action for double damages for the killing of stock upon defendant's railway at a place where it had

an alleged right to fence. At the close of plaintiff's evidence, the trial court directed a verdict for the defendant. Plaintiff appeals.—*Affirmed.*

*C. E. Underhill,* for appellant.

*James C. Davis, A. A. McLaughlin,* and *A. Kindall,* for appellee.

EVANS, J.—Plaintiff sues for the double value of two horses belonging to him which were killed upon defendant's railway track on the night of December 10, 1906. The petition is in two counts. In the first count he avers that the horses were killed at a place upon defendant's track and right of way where the defendant had a right to fence and failed to do so. In the second count it is averred that the horses were killed upon a public crossing, and that the defendant was negligent in failing to blow the whistle and ring the bell in approaching such crossing, as required by statute.

I.    The facts in the case are undisputed, no testimony having been offered on behalf of defendant. The horses were killed by one of defendant's trains at a point where

1. RAILROADS: crossings: injury to stock.

its track crosses the county line between Monona and Harrison Counties. There is no public highway which crosses the railroad track at this point. Crossing facilities, however, have been maintained there for more than twenty years; the same being protected by cattle guards and wing fences. The railroad company first fenced its track about twenty years ago. It made no provision at that time for a crossing at this point, nor do we understand that it left any opening in its right of way fences. One Conyers, a witness for plaintiff, was then the owner of the land on the south side of the county line in Harrison County on both sides of the railway, and now known as the "Crane land." He was also in occupancy of the land on

the north side of such county line and on both sides of the railway, which land is now occupied by the plaintiff. The following is a plat of the premises involved in our statement:

Prior to the fencing of the right of way, Conyers crossed the railway from the east to the west side ·at a place known as the "sand hill," about a quarter of a mile north of the county line, although no provision was made for such use by the railway company. After the railway company fenced its right of way, Conyers applied for a private crossing. He proposed that it be placed on the county line, on the theory that a public highway might be later established thereon. The railway company acceded to his request, and placed plank between its rails at the indicated point, and built approaches from either side. It also constructed cattle guards and wing fences and opened its right of way fence, and Conyers used this· crossing as a private open crossing for some years. After a few years, however, he voluntarily fenced it off, the location of the fence· at the east side appearing in the plat in the curved

line; and this was the situation when Weaver succeeded Conyers in the occupancy of the land, some four years prior to the accident. After Weaver went into possession, he continued to maintain the fence, but put a gate therein, and he maintained this gate up to the time of the injury. The public never had access to this crossing. Shortly before the accident, some trespassers passed through this gate in the night and left it open, and the plaintiff's horses passed through such open gate upon the defendant's track. This also occurred in the night. Plaintiff testified that the fence and gate were in good repair, and were sufficient to have prevented the access of the horses to the right of way, except for the unauthorized act of trespassers, as above indicated.

Upon this state of facts, we see no escape from the conclusion of the trial court. The defendant and the plaintiff and his predecessor all acquiesced in the right of the owner and tenant of the lands in question to the use of this crossing as a private crossing, and as such the plaintiff had a right of access to it. The course of conduct between the parties shows without dispute that the railroad company had permitted the adjoining landholders to have their election either of an open crossing or a closed one. If a closed crossing, the plaintiff was entitled to a gate of access thereto. If he chose to maintain it himself, rather than to ask it of the railroad company, it did not change his right or relation to the crossing. The railway company having once conceded an open crossing and having adapted itself thereto, the plaintiff and his predecessor were in a position, by using their own fence, to change from an open to a closed crossing, or vice versa, at any time, of their own volition. Under these circumstances, we do not see how it is possible to say that the railway company, in the absence of any demand, was in default for failure to close the crossing. And, if it were, it affirmatively appears that a sufficient fence was maintained by the plaintiff, and

that the escape of the horses upon the track did not result from an insufficient fence.

The case of *Tyson v. Railroad Co.*, 43 Iowa, 209, is in point and quite decisive. We quote the following from the opinion in that case: "The plaintiff in this case was maintaining a lane closed by a gate at each end, one on the public road, and the other at his house. So far as the record shows, he was doing so without objection. The lane fences and gates might be regarded as constituting a part of the railroad fence, merely set out upon the land-owner's premises, and maintained by him for his accommodation. These fences and gates constituted as effectual a barrier against cattle not admitted to the lane as they would have done if they had been in the line of the road. While the plaintiff was maintaining the fences and gates, apparently for the purpose of enjoying an open crossing, we think the company was justified in assuming that he preferred an open crossing. It was not for him to complain, therefore, that his cow strayed upon the track." To the same effect are the following: *Craig v. Wabash R. R. Co.*, 121 Iowa, 471; *Fowbel v. Railroad Co.*, 125 Iowa, 215; *Hovorka v. Railroad Co.*, 31 Minn. 221 (17 N. W. 376).

It is urged by the plaintiff that the facts here referred to were not pleaded by the defendant as an affirmative defense. We do not think such an affirmative pleading was necessary. These facts are necessarily involved in the general issue. Perhaps it was not necessary for plaintiff to prove them.

2. SAME: pleadings: evidence.

Under the statute, he might have made a *prima facie* case upon less evidence than was introduced. Even this, however, is very doubtful, in view of the peculiar circumstances of the case. The testimony of the plaintiff necessarily disclosed that the horses were killed upon an actual crossing. The inquiry whether the crossing was public or private was unavoidable. Likewise whether the private cross-

ing was open or closed, so far as the railway company was concerned. In any event, these facts were all put in evidence by the plaintiff himself without objection, and they conclusively negative an essential element of plaintiff's case; i. e., that the horses passed upon the right of way by the failure of the company to maintain a sufficient fence. *Norman v. Railroad Co.,* 110 Iowa, 284.

We think, therefore, that the trial court reached a correct conclusion upon this branch of the case.

II. It is urged, however, under the second count of the petition, that the defendant was guilty of negligence and should be held liable on that count. It is not claimed that the defendant was guilty of any negligence in failing to discover the open gate, or in failing to discover the horses upon the track in time to have prevented the injury. The only averment of negligence is the failure of the defendant company to sound the statutory signals of whistling and ringing the bell while approaching the crossing. Section 2072, Code. This question, however, is settled adversely to the plaintiff in the case of *Nichols v. Railroad Co.,* 125 Iowa, 237. It was there held that section 2072 has no application to private crossings.

No other questions are presented for our consideration. The order of the trial court must therefore be *affirmed.*